IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 4:15CR3079 |
| vs. | GOVERNMENT BRIEF IN RESPONSE TO DEFENDANT'S MOTION TO REDUCE SENTENCE |
| DARRELL W. JENKINS, | |
| Defendant. | |

The United States of America, respectfully submits this response in opposition to Defendant Darrell Jenkins's (hereinafter: Jenkins) Motion to Early Release. (Doc #74). Jenkins seeks an order from this Court reducing his sentence to time served or permitting him to serve the remainder of his sentence under home confinement pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Doc #74). The Government respectfully submits that Jenkins's motion be denied on the grounds that Jenkins has failed to show he qualifies for a sentence reduction pursuant Section 3582(c)(1)(A), and Jenkins has not yet exhausted his administrative rights with regard to this request.

**Procedural Background**

On July 22, 2015, the Grand Jury for the District of Nebraska returned a five-count Indictment charging Jenkins with Enticement of a Minor, in violation of 18 U.S.C. § 2422(b); transfer of obscene material to a minor in violation of 18 U.S.C. § 1470; receiving child pornography after being previously convicted of a sex offense, in violation of 18 U.S.C. § 2252A(a)(2); possession of child pornography after being previously convicted of a sex offense, in violation of 18 U.S.C. § 2252(a)(4)(B); and committing a sexual abuse offense during a time Jenkins was required to register as a sex offender under the laws of Nebraska, in violation of 18 U.S.C. § 2260A. (Doc #1). On December 4, 2015, Jenkins entered his initial appearance in federal court and pleaded not guilty to the Indictment. (Doc #10). Jenkins was ordered detained pending

trial by the Magistrate Judge.  (Doc # 18, 21). The Magistrate Judge found that Jenkins "would pose a risk of nonappearance at court proceedings and . . . a risk of harm to the public."  (Doc. #21).

On March 10, 2016, Jenkins pleaded guilty to receiving child pornography after being previously convicted of a sex offense, Count III of the Indictment. (Doc #30 - 32). The plea agreement called for a term of imprisonment of 204 months pursuant to Rule 11(c) of the Federal Rules of Criminal Procedure.  On June 24, 2016, this Court approved the plea agreement and sentenced Jenkins to 204 months' incarceration to be followed by 17 years of supervised release. (Doc #47, 52).

On May 20, 2019, Jenkins filed a Motion to Reduce Sentence with this Court. (Doc # 55). Jenkins claimed that his sentence should be reduced due to medical conditions which he developed both before and after sentencing.  This Court denied Jenkins request for compassionate release on August 8, 2019. (Doc #56).  Jenkins appeal to the Eighth Circuit was dismissed as untimely on November 19, 2019.  (Doc # 67, 68).  On April 13, 2020, Jenkins filed a motion for reconsideration of his earlier request for release now citing the dangers of COVID-19 as grounds for release.  (Doc #72).  Jenkins' motion was denied by this Court as untimely on April 14, 2020. (Doc #73).

On May 4, 2020, having served less than 5 ½ years of his 17 year sentence, Jenkins filed a renewed Motion to Reduce Sentence. (Doc #74). Specifically, Jenkins requests that this Court reduce his sentence to time served or permit him to serve the remainder of his sentence, approximately 10 years with good time credits, under home confinement. (Doc #74). In support of this request, Jenkins argues that his chronic medical conditions make him particularly at risk of serious illness or death if he is exposed to COVID-19. (Doc #74). As part of this motion, Jenkins attached an Inmate Request to Staff, dated April 8, 2020, to the Staff of FCI-Butner Low Security

Corrections Institution (LSCI-Butner) requesting a reduction in sentence. (Doc #74, p. 5).  In the request, Jenkins alleged that he met the qualifications for being determined Debilitated. (Cod #74, p. 5).  The motion also attached the response from the Warden of LSCI Butner, Tamara S. Lyn, denying Jenkins request for release.  (Doc #74, p. 4).  In the denial, Warden Lyn states that "[i]t has been determined that you **do not** meet the criteria under **Debilitated Medical Condition** at this time.  Although you have medical conditions, you remain fully independent and are able to complete all your own activities of daily living." (Doc #74, p. 4).  The letter from the Warden rejecting Jenkins' claim also provided Jenkins with information regarding the appeal process of the Warden's decision. (Doc #74, p. 4).  Jenkins' petition to this Court does not indicate that whether he filed an appeal of the Warden's denial.

**Argument**

**I.      Jenkins's Request for a Reduced Sentence Should be Denied.**

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 825 (2010). As the Supreme Court has recognized, finality is an important attribute of criminal judgments, and one "essential to the operation of our criminal justice system." *Teague v. Lane*, 489 U.S. 288, 309 (1989) (plurality opinion). Accordingly, it is well established that once a district court has pronounced sentence and the sentence becomes final, the court has no inherent authority to reconsider or alter that sentence. Rather, it may do so only pursuant to statutory authorization. *See, e.g.*, *United States v. Addonizio*, 442 U.S. 178, 189 & n.16 (1979); *United States v. Washington*, 549 F.3d 905, 917 (3d Cir. 2008); *United States v. Smartt*, 129 F.3d 539, 540 (10th Cir. 1997) ("A district court does not have inherent authority to modify a

previously imposed sentence; it may do so only pursuant to statutory authorization.") (internal quotation marks omitted).

Title 18 U.S.C. Section 3582(c)(1)(A), as modified by the First Step Act, allows the Director of the BOP or an inmate to move the court for the reduction of an inmate's prison sentence. A sentence reduction pursuant § 3582(c)(1)(A) is also referred to as "compassionate release." *See* Pub. L. No. 115-391, § 603(b). Section 3582(c)(1)(A) provides in pertinent part:

> **(c) Modification of an imposed term of imprisonment**.--The court may not modify a term of imprisonment once it has been imposed except that—
>
> **(1)** in any case—
>
>> **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>>
>>> **(i)** extraordinary and compelling reasons warrant such a reduction; or
>>>
>>> **(ii)** the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>>
>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). According to the statute, an inmate may petition the court for a reduction of sentence under § 3582(c)(1)(A) only after certain procedural requirements are met.

4

Specifically, when all administrative remedies have been exhausted or after a lapse of 30 days from requesting such relief from the warden of the BOP facility in which the defendant is held.

When an inmate's request is denied by the Warden, the inmate may appeal the denial through the Administrative Remedy Procedure in 28 CFR 542(B). *See* Federal Bureau of Prisons Program Statement 5050.50, *Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)*, § 571.63 Denial of Request, available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf. An inmate has not exhausted their administrative remedies until they receive a denial from either General Counsel or the Director of the Bureau of Prisons. *Id.* Information from LSCI-Butner indicate the Jenkins has not filed an appeal to the Warden's denial of his request for release.

The inmate bears the burden of proving both that he has satisfied these procedural requirements for judicial review—*i.e.* that he has "exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf" or that 30 days have lapsed "from the receipt of such a request by the warden"—and that "extraordinary and compelling reasons" exist to support the motion. § 3582(c)(1)(A); *see United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); *cf. United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) ("[A] defendant, as the § 3582(c)(2) movant, bears the burden of establishing that retroactive amendment has actually lowered the guidelines range in his case.").

Jenkins's motion should be denied because it fails to meet the jurisdictional requirements of § 3582(c)(1)(A). Jenkins' request for a sentence reduction was filed with LSCI-Butner on April 8, 2020. (Doc #74, p. 5). It was denied by the Warden on April 22, 2020. (Doc #74, p. 4). Jenkins has not represented or proven to this Court that he has appealed the Warden's decision. Jenkins' motion to this Court was filed on May 4, 2020. (Doc #74). Since Jenkins has not complied with

the statutory requirements of § 3582(c)(1)(A), his claim is not jurisdictionally valid.  Jenkins'

motion should be denied.

Jenkins's motion should also be denied because it fails to show that a compassionate

release is warranted. Pursuant to § 3582(c)(1)(A), the Court has the authority to entertain Jenkins'

motion to reduce his term of imprisonment after considering the § 3553(a) factors if "extraordinary

and compelling reasons warrant such a reduction." § 3582(c)(1)(A)(i). Congress delegated to the

Sentencing Commission the task of defining such reasons. *See* 28 U.S.C. § 994(t); *see also*

U.S.S.G. §1B1.13, comment (n.1). Under the Guidelines, "extraordinary and compelling reasons"

exist under the following circumstances:

(A)      **<u>Medical Condition of the Defendant</u>**.--

(i)  The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii)  The defendant is--

(I)      suffering from a serious physical or medical condition,

(II)     suffering from a serious functional or cognitive impairment, or

(III)  experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)      **Age of the Defendant**.--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C)      **Family Circumstances.—**

6

(i)  the death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D)      **Other Reasons.—**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)

U.S.S.G. §1B1.13, comment (n.1).

Jenkins does not qualify for a reduction of his sentence under any of the foregoing sections. Jenkins does not allege that he is suffering from any type of medical condition as required under section (A). Jenkins does not qualify under section (B), as he has not yet reached the age of 65. Jenkins also does not claim any family circumstances as outlined in subsection (C). Finally, under subsection (D), the director of the BOP has not determined that any other extraordinary or compelling reason exists in Jenkins' case. Warden Lyn specifically determined that Jenkins remains "fully independent and [ ] able to complete all your own activities of daily living." (Doc #74, p. 4).  As such, Jenkins fails to demonstrate that extraordinary and compelling reasons warrant this Court to order a sentence reduction under 18 U.S.C. § 3582(c)(1)(A).

Jenkins makes a generalized argument that his medical conditions place him at an increased risk should he contract the coronavirus. Unfortunately, Jenkins' circumstance is not extraordinary in the context that many individuals across the nation are in the same or similar position and Jenkins' medical condition remains the same whether or not he is released. While the Government is attune to the difficulties facing inmates, this particular instance simply fails to meet the requirements of the law and policy. "The medical records from [LSCI-Butner] … do not lend support to any suggestion that defendant's ability [']to provide self-care within the environment of a correctional facility['] has been substantially diminished." *United States v. Ayon-Nunez,* 2020

WL 704785, *2 (E.D. CA filed February 12, 2020).  "Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release."  *Id.* at *3.  According to officials at the Low Security Institution in Butner, North Carolina (LSCI Butner), there are currently 36 inmates and 3 staff members who have contracted COVID-19. However, based on information reported by staff members of the facility, none of the cases have come from the general population of the facility.  The number of cases, as reported from representatives for the facility on May 6, 2020, reflects inmates that came from other institutions, or processed into the Complex, and are in quarantine.  Jenkins is housed in the general population and would have no contact with the quarantined inmates.  Further, while the Government acknowledges that certain underlying health problems can increase the risk of complications should a person contract COVID-19, the facility at Butner includes the Federal Medical Center at Butner that is specially equipped to address medical concerns of inmates—and as such, any additional risk posed to Jenkins by exposure to COVID-19 is purely hypothetical.

The Government does not downplay Jenkins' concerns in any way. This Court, like all citizens, is vividly aware that COVID-19 is an illness which has infected large numbers of people and caused many deaths in a short period of time. The BOP has accordingly taken significant measures in an effort to protect the health of the inmates in its charge. The BOP began planning for potential coronavirus transmissions in January 2020. At that time, the agency established a working group to develop policies in consultation with subject matter experts in the Centers for Disease Control (CDC), including by reviewing guidance from the World Health Organization (WHO). On March 13, 2010, the BOP announced that it was implementing the Coronavirus (COVID 19) Phase Two Action Plan ("Action Plan") in order to minimize the risk of COVID-19

transmission into and inside its facilities. The Action Plan comprises many preventive and mitigation measures, including the following:

**Screening of Inmates and Staff:** All new BOP inmates are screened for COVID-19 symptoms and risk of exposure. Asymptomatic inmates with a documented risk of exposure will be quarantined; symptomatic inmates with documented risk of exposure will be isolated and tested pursuant to local health authority protocols. In areas with sustained community transmission, all facility staff will be screened for self-reported risk factors and elevated temperatures. (Staff registering a temperature of 100.4 degrees F or higher will be barred from the facility on that basis alone.)

Contractor access to BOP facilities is restricted to only those performing essential services (e.g. medical or mental health care, religious, etc.) or those who perform necessary maintenance on essential systems. All volunteer visits are suspended absent authorization by the Deputy Director of BOP. Any contractor or volunteer who requires access will be screened using the same procedures as applied to staff prior to entry.

**Quarantine Logistics:** The Action Plan directs all BOP institutions to assess their stockpiles of food, medicines, and sanitation supplies and to establish quarantine areas within their facilities to house any detainees who are found to be infected with or at heightened risk of being infected with coronavirus pursuant to the above-described screening protocol.

**Suspension of Social Visits and Tours:** The BOP has placed a 30-day hold on all social visits, such as visits from friends and family, to limit the number of people entering the facility and interacting with detainees. This suspension will be reevaluated at the end of the 30 days. In order to ensure that familial relationships are maintained throughout this disruption, BOP has

increased detainees' telephone allowance to 500 minutes per month. Tours of facilities are also suspended for at least the first 30 days that the Action Plan is in effect.

**Suspension of Legal Visits:** The BOP has also placed a 30-day hold on legal visits at which time the suspension will be reevaluated. Case-by-case approval for legal visits, after the attorney has been screened for infection in accordance with the screening protocols for prison staff, and confidential legal calls will be allowed in order to ensure access to counsel.

**Suspension of Inmate Movements:** The BOP has also ceased the movement of inmates and detainees among its facilities for at least the first 30 days that the Action Plan is in effect. Though there will be exceptions for medical treatment and similar exigencies, this will prevent transmissions between institutional populations. Likewise, all official staff travel has been cancelled, as has most staff training.

**Modified Operations:** Finally, the Action Plan requires wardens at BOP facilities to modify operations in order to maximize social distancing. Among the possible actions are staggering of meal times and recreation time.

Further details regarding the efforts made by the BOP to confront the issues presented by COVID-19 are available at: https://www.bop.gov/resources/news/20200313_covid-19.jsp, and at a daily updated resource page: https://www.bop.gov/coronavirus/index.jsp. Taken together, these measures are designed to sharply mitigate the risks of COVID-19 transmission in a BOP institution. BOP professionals will continue to monitor this situation and adjust its practices as necessary to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating all persons sentenced or detained based on judicial orders.

Jenkins' motion does not address the measures that BOP is undertaking to prevent any spread, including suspension of social visitation, internal inmate movements, legal visits, official

staff travel, training, access by volunteers and many contractors; extensive screening of staff and inmates (including screening of all new inmates); quarantine; and modified operations to maximize social distancing as much as practicable. Given that no persons will be admitted to BOP facilities without being screened for symptoms and risk of infection, the risk that Jenkins will be infected simply as a result of incarceration is not necessarily higher than his risk of infection upon release. Based on this record, there is no evidence that BOP custody in general or custody at LSCI Butner in particular puts Jenkins at greater risk of contracting the coronavirus as compared to the general population in the United States.

Even if this Court were to find that extraordinary and compelling reasons warrant reconsideration of the 3553(a) factors, this Court should find that a sentence reduction is not appropriate in this case. As amended November 1, 2018, U.S.S.G. § 1B1.13 repeats the text of 18 U.S.C. § 3582(c)(1)(A) and adds that the court should reduce the sentence only if the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." This defendant is a danger to the community, and should not be considered for compassionate release.

Under 18 U.S.C. § 3142(g), the Court must consider four factors in determining whether the defendant might present a danger:  (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g)(1)–(4).

Consideration of these factors—which are not affected by COVID-19—does not allow this Court to conclude that Defendant is not a danger to the safety of any other person or the community.

The conviction in the case at bar involves the receipt of child pornography by Jenkins after he was previously convicted of a state case involving sexual abuse. The crime for which he was charged involve a serious risk to public safety. Jenkins was involved in sending sexual images, including images of his genitalia, and texts to a minor female victim. After an officer of the Alliance Nebraska Police Department began communicating with Jenkins in an undercover capacity as a minor female, Jenkins continued to communicate sexually suggestive comments to the "minor" asking for sexual relations with Jenkins. Jenkins had been previously convicted of Third Degree Sexual Assault, a Class I misdemeanor, in Custer County, Nebraska, in March, 2005. On May 11, 2015, officers executed a search warrant at Jenkins' residence. Investigators searched Jenkins' iPhone and found several images child pornography as defined by federal law. Some of the images were received through the use of Kik, an internet messenger application then based in Canada. During the forensic examination of Jenkins' computers, investigators identified 37 videos and 46 pictures of child pornography. The child pornography was received by Jenkins between December 1, 2014, and May 10, 2015. At sentencing, Jenkins's extensive criminal record, which includes convictions for aggravated assault, contributing to the delinquency of a minor, and Attempt of a Class 3 Felony, amended from First Degree Assault, resulted in a criminal history category V. The danger Jenkins poses to the public is further demonstrated by the fact that Jenkins was detained prior to trial due to the Magistrate Judge's determination that Jenkins was a risk of flight and a danger to the community.

Jenkins has only served approximately 60 months of a 204 month sentence. Jenkins's chronic conditions were brought to this Court's attention not even one year ago when Jenkins filed

his first motion for release—and there have not been any significant changes to his age or health conditions as his sentence is so recent. Finally, the BOP has at its disposal other measures, including a temporary furlough (with appropriate quarantine periods) to address Jenkins's concerns without the drastic step of reducing or altering Jenkins's sentence. As the district court noted in *United States v. Malone,* 2019WL 3337906 (W.D. Va. 2019) "I do not doubt that [Defendant's] imprisonment is made more severe by his condition, for which I have sympathy. However, the federal prison system contains many inmates who have medical conditions that make confinement more difficult. I do not believe that the intent of the Sentencing Commission's Policy Statement is to reach all such inmates." *Id.* at *2.

Nothing about the COVID-19 pandemic reduces Jenkins' danger to others. Jenkins argues that his "attitude has changed. I try to better myself. I don't watch TV all day. I educate myself so I don't come back." (Doc #74, p.2). However, this is not sufficient to establish grounds for a reduction of his sentence. "[M]aking good use of one's time in prison and regretting one's actions are not grounds for sentence reductions under the First Step Act." *United States v. Polnitz*, 2020 WL 1139836, *2 (E.D. Wis. 2020). In sum, Jenkins has failed to demonstrate that the § 3553(a) factors the Court considered at the time of sentencing have changed, and thus the Court should deny Defendant's motion for immediate release.

Although our nation in the midst of a national crisis requiring extraordinary measures, § 3582 contemplates compassionate release, not the widespread release of inmates serving lawfully-imposed sentences. In *Dillon v. United States*, 560 U.S. 817, 826 (2010), the Supreme Court determined that the sentencing court could only consider a reduction in sentencing if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. Based on that reasoning, Jenkins's request does not meet the requirements for release.

13

**II.      This Court should deny Jenkins's request to be resentenced to home confinement.**

Jenkins alternatively asks the Court to resentence him to home confinement for the remaining 48 months of his custodial sentence. (Doc #148). The Court should decline the request because read in conjunction, 18 U.S.C. §§3621(b) and 3624(c) impose upon the BOP a qualified obligation to facilitate a prisoners' transition from incarceration in a prison facility to a halfway house. (*See Elwood v. Jeter*, 386 F.3d 842, 844, 847 (8th Cir. 2004).) "There is no question that § 3621(b) provides the BOP with broad discretion to choose the location of an inmate's imprisonment." *Fults v. Sanders*, 442 F.3d 1088, 1090 (8th Cir. 2006). In a concurring opinion Justice Bright opined that the Second Chance Act of 2007 marked "an increasing special obligation to help federal offenders successfully reenter into society." *United States v. Wessels*, 539 F.3d 913, 915 (8th Cir. 2008) (Bright, J., concurring) (citing Pub. L. No. 110-199, 122 Stat. 657 (Apr. 9, 2008)). The First Step Act, under which the defendant is seeking release, further expanded the BOP's authority to place prisoners, providing more ways to reach rehabilitation goals, but it did not change a District Court's authority to place an inmate, and does not provide authority for the Court to order home confinement. However, the Court does not have jurisdiction to address an inmates request for home confinement for the remainder of his sentence.  As the district court noted in *United States v. James,* 2020 WL 1922568, *2, (D. Minn. filed April 21, 2020)

> Although the First Step Act expanded release opportunities, courts have observed that 'it is the BOP—not the courts—who decides whether home detention is appropriate… Rather than mandate mandate any particular home confinement decision, Congress instead directed BOP to place prisoners on home confinement 'to the extent practicable.' [Citations omitted]

*Id.*

14

Regardless of the Court's determination on compassionate release, the authority to determine the defendant's placement for the remainder of his sentence rests with the BOP.

Even if the Court wishes to consider home confinement, the Court should reject this alternative. Jenkins has served only approximately 60 months of a 204 month sentence. According to the BOP web site, Jenkins scheduled release date from prison is May 25, 2030, 10 years from now. Jenkins has provided no plan for the Court as to what his living situation will be if he is in fact released. Jenkins has not provided the Court of any conditions of self or directed quarantine if he is released. If the situation at Butner LSCI is as bad as Jenkins says, allowing him to be released without a plan in place would be detrimental to the community. That is precisely why the BOP is uniquely in the position to determine the eligibility and availability of alternative placements for inmates.

More importantly, home confinement will not lessen the danger to the community. In rejecting the request for home confinement of a defendant convicted of receipt of child pornography, the Court in *United States v. Miezin,* 2020 WL 1985042, *5 (N.D. Ohio filed 4/27/2020) ruled

> Miezin's requested relief herein – home confinement – would not lessen his danger to the community. Quite the opposite, it would only serve to enhance his danger. Miezin's crime does not require anything more than access to the internet. In today's society with smartphones, tablets, laptops, smart TV's, and countless other devices, it would not be possible to place Miezin in home confinement and eliminate his ability to engage in his prior criminal conduct. Further, the pandemic and the CDC's recommended guidelines would only serve to make it more difficult to monitor Miezin's behavior in home confinement. Because Miezin could engage in his prior criminal conduct at any time from

15

his place of home confinement, effectively monitoring him would require repeated visits to his home.  Such visits would enhance the risk of spread of COVID-19 to Miezin, anyone living with him, and the individuals charged with monitoring his compliance.

*Id.*

The same rationale applies in this case.  Jenkins posted sexual images, including images of his genitalia, to a minor female on Facebook.  He continued to receive images of child pornography through the internet found at his residence during the execution of a search warrant. He could continue that activity if released from prison.  He has at least 10 years left on his prison term, with an additional 17 years left of supervised release to follow.  In order to supervise him properly, he would need to be supervised by frequent visits to his residence.  He, and the supervising officer, would be exposed to an increased risk of obtaining a whole host of diseases, including COVID-19.  More importantly, Jenkins would only need internet access to continue his criminal activity. Jenkins would only be one click away from soliciting minor victims for sex or receiving images of child pornography.  The risk to the community is too great.  Jenkins motion should be denied.

### Conclusion

For the reasons stated herein, the United States respectfully requests that this Court deny Defendant Jenkins' Motion to Reduce Sentence.

DATED this 11th  day of May, 2020.

By:     s/ Steven A. Russell
STEVEN A. RUSSELL, #16925
Assistant U.S. Attorney
487 Federal Building
100 Centennial Mall North
Lincoln, NE  68508-3865
Tel:  (402) 437-5241
E-mail:  steve.russell@usdoj.gov

16

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 11, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all registered participants.  I also hereby certify that a copy of the same was served by regular mail, postage prepaid, to the following non-CM/ECF participants:

s/ Steven A. Russell
STEVEN A. RUSSELL